# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: April 5, 2024
Reissued for Public Availability: May 1, 2024

\* \* \* \* \* \* \* \* \* \* \* \* \* \*
BRENDA CARRASQUILLO,              *     PUBLISHED
                                  *
        Petitioner,                *     No. 21-1866V
                                  *
v.                                *     Special Master Dorsey
                                  *
SECRETARY OF HEALTH                *     Dismissal Decision; Failure to Prosecute;
AND HUMAN SERVICES,                *     Insufficient Proof; Entitlement.
                                  *
        Respondent.                *
                                  *
\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Brenda Carrasquillo, pro se, Missouri City, TX, for Petitioner
Camille Michelle Collett, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

## I.     INTRODUCTION

On September 16, 2021, Brenda Carrasquillo ("Petitioner") filed a petition for compensation in the National Vaccine Injury Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2018).[2] Petitioner alleges that as a result of receiving an influenza ("flu") vaccine administered on November 3, 2018, she suffered injuries including neuropathy, neuritis, paresthesia, neuralgia, arthralgia, myalgia, myositis, and chronic fatigue. Petition at Preamble (ECF No. 1).

---

[1] Pursuant to Vaccine Rule 18(b), this Decision was initially filed on April 5, 2024, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this Decision is reissued in its original form for posting on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

Based on the reasons set forth below and in the Show Cause Order dated December 19, 2023, and for failure to comply with the Show Cause Order, the undersigned **DISMISSES** this case for failure to prosecute and insufficient proof.

Moreover, the undersigned finds that Petitioner has failed to prove by preponderant evidence that the vaccination administered to her on November 3, 2018 caused any injury. See Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1280 (Fed. Cir. 2005). Thus, the undersigned finds Petitioner is not entitled to compensation.

## II.     BACKGROUND

### A.     Procedural History

Petitioner was initially represented by counsel. On September 16, 2021, Petitioner filed a petition. Petition. Petitioner filed medical records on September 27, 2021. Petitioner's Exhibits ("Pet. Exs.") 1-7. Petitioner filed subsequent medical records on February 25, 2022, and April 5, 2022. Pet. Exs. 17-19.

The case was reassigned to the undersigned on June 8, 2022. Notice of Reassignment dated June 8, 2022 (ECF No. 25). On January 1, 2023, Respondent filed his Rule 4(c) report arguing against compensation. Respondent's Report ("Resp. Rept.") at 2 (ECF No. 37). Petitioner was ordered to file an expert report addressing the issues raised in Respondent's Rule 4(c) report. Order dated Jan. 11, 2023 (ECF No. 38).

On March 13, 2023, Petitioner filed an unopposed motion for extension of time to file an expert report and/or otherwise take appropriate steps to resolve this action. Pet. Motion for Extension of Time ("Pet. First Mot. for Extension"), filed Mar. 13, 2023 (ECF No. 39). In her motion, Petitioner reported that Respondent's Rule 4(c) report outlined that Petitioner had not received a definitive diagnosis from her doctors. Id. at 1. Based on communications with her doctors, Petitioner indicated she suffered from an autoimmune small fiber neuropathy. Id. at 2. However, that diagnosis had not been listed in her medical records at that time. Id. And although Petitioner was still significantly suffering from paresthesia and neuropathy, she had not had recent medical treatment. Id. It was unknown at that time whether she would be able to timely follow-up with her doctors such that she would have her medical diagnosis clearly listed in her records. Id. Petitioner also reported that she, through counsel, had been working with Respondent to possibly resolve the litigation. Id. Petitioner's counsel was working toward one of the following three outcomes: resolving the case with Respondent; resolving the case otherwise with the client's consent; or submitting an expert report. Id. If Petitioner's counsel was unable to achieve one of those three outcomes, Petitioner's counsel would be withdrawing as attorney for Petitioner. Id. The undersigned granted Petitioner's motion for extension. Order dated Mar. 13, 2023 (ECF No. 40).

On April 26, 2023, Petitioner filed a second motion for extension of time to file an expert report and/or otherwise take appropriate steps to resolve this action. Pet. Second Mot. for Extension, filed Apr. 26, 2023 (ECF No. 41). Petitioner's counsel was then working toward two outcomes: resolving the case with Petitioner's consent; or submitting an expert report. Id. at 1-2.

2

If Petitioner's counsel was unable to achieve one of those two outcomes, Petitioner's counsel would be withdrawing as attorney for Petitioner. Id. at 2. The undersigned granted Petitioner's motion for extension. Order dated Apr. 26, 2023 (ECF No. 42). Neither of these outcomes were achieved by the Court-imposed deadline.

In May 2023, Petitioner's counsel filed a motion for interim attorneys' fees and costs and a motion to withdraw as counsel. Pet. Mot. for Interim Attorneys' Fees and Costs ("Pet. Mot. for Interim Fees"), filed May 10, 2023 (ECF No. 43); Pet. Mot. to Withdraw as Attorney ("Pet. Mot. to Withdraw"), filed May 11, 2023 (ECF No. 44). Petitioner's counsel requested payment be made directly to counsel since he had lost contact with Petitioner. Pet. Mot. for Interim Fees, Tab C. Petitioner's counsel was unsure whether Petitioner intended to continue to pursue her claim after he withdrew. Pet. Mot. to Withdraw at ¶ 6. The undersigned ordered Petitioner's counsel to file an affidavit, setting forth in detail the steps he had taken to attempt to contact his client since March 2023, and provide the Court with Petitioner's last known address. Order dated May 30, 2023 (ECF No. 45). After missing the first deadline, Petitioner's counsel filed an affidavit explaining that he made multiple attempts via telephone and mailings to contact Petitioner, but the attempts were unsuccessful. Order dated June 14, 2023 (ECF No. 46); Affidavit, filed June 15, 2023 (ECF No. 47). Counsel also provided Petitioner's last known address. Affidavit at ¶ 10.

On July 7, 2023, the undersigned issued a decision granting interim attorney fees and costs. Decision Awarding Interim Attorneys' Fees and Costs dated July 7, 2023 (ECF No. 48). On August 1, 2023, the undersigned granted Petitioner's counsel's motion to withdraw as Petitioner's attorney. Order dated Aug. 1, 2023 (ECF No. 51).

Prior to the withdrawal of Petitioner's counsel, the next step in the case was for Petitioner to file an expert report addressing the issues raised in Respondent's Rule 4(c) report and/or otherwise take appropriate steps to resolve this action. See Order dated Aug. 16, 2023 (ECF No. 55). Accordingly, on August 16, 2023, Petitioner was ordered to file a status report indicating how she wished to move the case forward now that she was representing herself. Id. at 1-2. This order was sent via first class mail to Petitioner's last known address. Petitioner failed to file a status report by the Court-imposed deadline of September 15, 2023. Order dated Sept. 22, 2023 (ECF No. 56).

On September 22, 2023, Petitioner was advised that she missed a deadline and was again ordered to file a status report indicating how she wished to move the case forward now that she was representing herself. Order dated Sept. 22, 2023. Petitioner was warned that failure to follow Court orders, as well as failure to file necessary evidence, may result in dismissal of Petitioner's claim. Id. at 1. Petitioner again failed to file a status report by the Court-imposed deadline of October 23, 2023. Order dated Nov. 13, 2023 (ECF No. 57).

On November 13, 2023, Petitioner was advised that she missed another deadline. Order dated Nov. 13, 2023. Petitioner was ordered to file a status report indicating whether she wished to continue to pursue her claim and to provide additional contact information. Id. at 2. She was also to report on her intent, if any, on obtaining new counsel and was given instructions on the Court's website about those attorneys who were admitted to practice in the Court. Id. at 1-2.

Petitioner was also advised of how to file her status report and that if she wanted to send records and receive Court notices electronically, she could complete the e-notification consent form. Id. Petitioner was warned that failure to file a status report by the Court-imposed deadline would result in an Order to Show Cause as to why this case should not be dismissed. Id. at 1. Petitioner missed her third deadline by failing to file a status report by December 8, 2023. Order to Show Cause dated Dec. 19, 2023, at 1 (ECF No. 58).

Accordingly, on December 19, 2023, the undersigned issued an Order to Show Cause, stating that Petitioner had repeatedly failed to comply with a number of Court orders and failed to file an expert report. Order to Show Cause at 3. Petitioner was warned that if she did not file evidence that Petitioner suffered a vaccine-related injury in compliance with the Order to Show Cause, the case would be dismissed. Id. Petitioner was informed this could be in the form of an expert report, addressing the issues raised in Respondent's Rule 4(c) report; medical records, clarifying/identifying a diagnosis; and/or a status report indicating Petitioner wishes to continue to pursue her claim, additional contact information, and indicating that she has retained an expert for review. Id. Petitioner failed to file any evidence suggested by the Court-imposed deadline of February 16, 2023 and failed to otherwise comply with the Order to Show Cause.

This matter is now ripe for adjudication.

### B.    Summary of Medical History[3]

Petitioner received a flu vaccine in her left deltoid on November 3, 2018. Pet. Ex. 2 at 656.

On November 6, 2018, Petitioner presented to the emergency department ("ED") with complaints of an itching, burning rash, and discomfort and cramping in her right leg with numbness and tingling that began one-and-one-half days ago. Pet. Ex. 2 at 368. She reported she got the flu shot on Saturday and felt her symptoms started after that. Id. at 366. Petitioner was concerned she had Guillain-Barré syndrome ("GBS"), but the physician assistant ("PA") "provided reassurance that there [was] no evidence of any [GBS] from the vaccine." Id. at 366, 368. Petitioner's symptoms of numbness and tingling resolved upon Dr. Shideh Imanian Parsa's evaluation. Id. at 365. Physical examination was unremarkable, and the assessment was an acute allergic reaction with an unclear inciting agent, possibly due to a new drug or food. Id. at 364, 367-68. She was discharged to home and advised to follow up with her primary care provider ("PCP"). Id.

On November 9, 2018, Petitioner returned to the ED with complaints of "progressive aches and pain [status post] flu shot on Saturday, [Petitioner] [was] also [status post] lithotripsy on Friday with general anesthesia." Pet. Ex. 2 at 226. It was noted that she presented three days earlier for similar symptoms but that now Petitioner developed weakness in both legs. Id. Her physical exam was unremarkable, and the impression included muscle weakness and "[flu] vaccine side effect." Id. at 227. During the hospitalization, Petitioner was evaluated by neurologist David Hahn, M.D. Id. at 286-88. By the time of Dr. Hahn's evaluation, Petitioner

---

[3] This summary is only of the pertinent medical records.

was "feeling back to her baseline normal self." Id. at 287. Physical examination was unremarkable. Id. at 286-87. Dr. Hahn's impression was "numbness and tingling in the fingertips and toes with mild weakness in the distal legs in the setting of a recent lithotripsy procedure as well as a flu vaccination. Her symptoms have resolved since [last night]." Id. at 287. There was an initial concern for GBS, but neither the timing nor resolution of symptoms was consistent with the diagnosis. Id. He suspected a "possible medication reaction or possible reaction to flu vaccine," or a combination "[e]xacerbated by a strong history of anxiety." Id. She was discharged and advised to follow up with her PCP and a neurologist. Id.

On November 20, 2018, Petitioner returned to the ED for complaints of facial bloating and night sweats. Pet. Ex. 2 at 180. Her examination and labs were unremarkable. Id. at 181-82. Petitioner did not report any numbness, tingling, or weakness. Id. The assessment was fatigue, with low suspicion of GBS, stroke, or multiple sclerosis. Id. at 182. The plan was to follow up with her PCP. Id.

On November 23, 2018, Petitioner presented to neurologist Jason Wong, M.D., for follow up from ED with tingling in her hands and feet. Pet. Ex. 5 at 39. Dr. Wong noted Petitioner's symptoms began after receiving a flu shot, receiving ciprofloxacin for the first time, and undergoing a kidney procedure. Id. at 41-42. It was noted that while hospitalized, Petitioner had magnetic resonance imaging ("MRI") "scans of her entire neuro axis which did not reveal any central nervous system abnormalities." Id. at 39. Blood work did not reveal any abnormalities either. Id. Petitioner reported feeling better since discharge from the hospital. Id. She reported numbness in her left fourth and fifth fingers as well as fatigue and soreness in her shoulder, elbows, arms and jaw. Id. She also complained of blurry vision. Id. Examination was unremarkable. Id. at 40-42. The assessment was paresthesia and musculoskeletal disorder. Id. at 41. She was reassured that there was "absolutely no evidence on her exam to raise concern for an acquired primary demyelinating poly radicular neuropathy such as [GBS] variants." Id. at 42.

On December 10, 2018, Petitioner returned to Jessica Marino, M.D., for complaints of muscle pain. Pet. Ex. 4 at 13. The history noted that Petitioner moved from Puerto Rico three months earlier and had "pains all over" for the past three months. Id. Her fatigue was improving, and she was experiencing migraines once per week. Id. She also complained of pain and "popping" in ears. Id. Examination was unremarkable, and the assessment included fatigue with diffuse pain, possibly fibromyalgia; migraine headaches; and right ear discomfort. Id. at 13-14.

On December 26, 2018, Petitioner returned to Dr. Wong for a six-week follow up and new symptoms of lower back pain as well as knee pain while walking. Pet. Ex. 5 at 36. Petitioner also had complaints of migraines. Id. Examination was unremarkable, and the assessment was paresthesias, muscle spasms in the back, and migraines. Id. at 36-37.

On January 28, 2019, Petitioner returned to her PCP office for follow up of back pain, migraines, myalgia and myositis, and nephrolithiasis. Pet. Ex. 4 at 6. Petitioner reported "ongoing myalgias since receiving flu vaccine" and waking up daily with myalgias in different places, without a particular pattern of proximal muscle weakness, rash, or stiffness. Id. Examination was unremarkable, and the assessment was lumbago and myalgia and myositis. Id.

at 7. Regarding the myalgias, the etiology was likely post-infectious "vs continuous [side effects] from flu vaccine vs systemic/autoimmune disease vs metabolic disease vs endocrine disease." Id. at 8.

On February 18, 2019, Petitioner presented to rheumatologist Erik Beger, M.D. Pet. Ex. 6 at 10. The assessment was arthralgia, unspecified joint; myalgia; and hypercalcemia. Id. Petitioner continued to see Dr. Beger for subsequent follow-ups and his assessment remained the same. See id. at 7, Pet. Ex. 8 at 35.

On February 25, 2019, Petitioner returned to Dr. Wong for a two-month follow up. Pet. Ex. 5 at 33. Petitioner's primary concerns at the time were ongoing pain in her mid and low back, neck, and knees, which Dr. Wong attributed to a musculoskeletal etiology. Id. at 33, 35. The assessment was neuralgia and neuritis, and migraines. Id. at 34-35. Dr. Wong noted that Petitioner had improved since initial onset of symptoms. Id. at 35. Additionally, Petitioner's examination did "not reveal any evidence to raise concern for large fiber neuropathy, myopathy, or other underlying neuromuscular disease process," including any variant of GBS. Id.

Petitioner continued to follow up with Dr. Wong. Pet. Ex. 5 at 7, 11, 15. An updated brain MRI was performed on May 23, 2019 and was normal. Id. at 43. Dr. Wong's assessment remained neuralgia and neuritis. Id. at 13.

On June 4, 2020, Petitioner presented to neurologist Irfan Lalani, M.D., for a two-year history of numbness and one-year history of tremors. Pet. Ex. 9 at 9. Examination was unremarkable, and the assessment was paresthesia of the skin and tremors. Id. at 10. The differential diagnosis included "peripheral neuromuscular disorder such as peripheral neuropathy." Id. The plan was to obtain an EMG and return in two weeks. Id. at 10-11. The EMG was performed on June 18, 2020, and the results were normal. Id. at 6-8, 12.

On August 5, 2020, Petitioner presented to a new neurologist, Greg McLaughlin, M.D., with complaints of tingling and tremors. Pet. Ex. 11 at 24. Dr. McLaughlin noted that Petitioner's EMG and neurologic examination were normal and reassured that she did not have a neuromuscular disease. Id. at 24-26.

To date, no other relevant records have been filed and there have been no expert reports.

### III.   DISCUSSION

When a petitioner fails to comply with court orders to prosecute her case, the court may dismiss the case. Sapharas v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Hum. Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993); Vaccine Rule 41(b); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests).

6

Vaccine Program cases that have been dismissed for failure to respond to an Order to Show Cause include but are not limited to: Byrd v. Sec'y of Health & Hum. Servs., 778 F. App'x 924 (Fed. Cir. 2019); Ghasemipor v. Sec'y of Health & Hum. Servs., No. 20-17V, 2020 WL 7497878 (Fed. Cl. Spec. Mstr. Nov. 23, 2020); Flores v. Sec'y of Health & Hum. Servs., No. 20-157V, 2020 WL 5798502 (Fed. Cl. Spec. Mstr. Sept. 2, 2020); Button ex rel. W.S.B. v. Sec'y of Health & Hum. Servs., No. 16-1391V, 2017 WL 2876099 (Fed. Cl. Spec. Mstr. June 5, 2017); Duncan v. Sec'y of Health & Hum. Servs., No. 16-1367V, 2020 WL 6738118 (Fed. Cl. Spec. Mstr. Oct. 19, 2020), mot. for rev. denied, 153 Fed. Cl. 642 (2021).

The Vaccine Program also has precedent for dismissing cases due to a failure to submit sufficient expert reports. See, e.g., M.G. v. Sec'y of Health & Hum. Servs., No. 17-743V, 2022 WL 1311661, at *21-22 (Fed. Cl. Spec. Mstr. May 3, 2022); Stachlewitz ex rel. H.G.S. v. Sec'y of Health & Hum. Servs., No. 13-220V, 2014 WL 5293629 (Fed. Cl. Spec. Mstr. Sept. 23, 2014); Duncan, 2020 WL 6738118.

Petitioner has had numerous opportunities over the course of almost eight months to file a status report, and she has failed to do so. The undersigned repeatedly warned Petitioner that failure to file comply with Court orders would result in the dismissal of the petition for failure to prosecute. Although the Order to Show Cause permitted Petitioner one last opportunity to show cause why this case should not be dismissed, she did not offer any evidence to support her alleged vaccine-related injury.

Petitioner's failure to file to comply with Court orders and failure to respond to the Order to Show Cause indicates a disinterest in pursuing her claim. Therefore, the undersigned finds it appropriate to dismiss this case for failure to prosecute.

Additionally, to receive compensation under the Act, Petitioner must prove either (1) that she suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table—corresponding to one of her vaccinations, or (2) that she suffered an injury that was actually caused by a vaccine. See §§ 11(c)(1), 13(a)(1)(A). The Federal Circuit has made clear, "the statute places the burden on [P]etitioner to make a showing of at least one defined and recognized injury." Lombardi v. Sec'y of Health & Hum. Servs., 656 F.3d 1343, 1353 (Fed. Cir. 2011) (affirming a special master's decision to dismiss a petition when petitioner could not establish that she had any of the three diagnoses alleged).

Here, Petitioner has not shown a defined recognizable injury or that her condition was actually caused by the flu vaccine. Moreover, there is no expert report by a qualified physician to opine as to causation. See § 13(a)(1); Lett v. Sec'y Health & Hum. Servs., 39 Fed. Cl. 259, 260-61 (1997). Without proof of injury or evidence of causation, the undersigned finds that the record does not support a claim under the Vaccine Act, or otherwise include preponderant evidence demonstrating that Petitioner sustained any vaccine injury.

### IV.    CONCLUSION

Accordingly, this case is **DISMISSED** for insufficient evidence and for failure to prosecute. In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the

Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.

    **IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master
